

BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

**08 CIV 6275**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
JUL 11 2008
U.S.D.C. S.D.N.Y.
CASHIERS

BALTSHIP A/S,

          Plaintiff,

        v.

SPLIETHOFF TRANSPORT B.V., CV
SCHEEPVAARTONDERNEMING
EMMAGRACHT and BV
BEHEERMAATSCHAPPIJ
EMMAGRACHT,

          Defendants.

08 Civ.

**VERIFIED COMPLAINT**

Plaintiff BALTSHIP A/S ("Plaintiff" or "Baltship"), by its attorneys Blank Rome LLP, complaining of the above-named Defendants SPLIETHOFF TRANSPORT B.V., CV SCHEEPVAARTONDERNEMING EMMAGRACHT and BV BEHEERMAATSCHAPPIJ EMMAGRACHT (collectively "Defendants"), alleges upon information and belief as follows:

    1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction.

2.      At all material times, Plaintiff was and now is a foreign company organized and existing under the laws of Denmark.

3.      At all material times, Defendant SPLIETHOFF TRANSPORT B.V. was and now is a corporation organized and existing under the laws of Holland and an agent for an undisclosed principal.

4.      At all material times, Defendant CV SCHEEPVAARTONDERNEMING EMMAGRACHT was and now is a corporation organized and existing under the laws of Holland and the registered owner of the M/V EMMAGRACHT (the "Vessel").

5.      At all material times, BV BEHEERMAATSCHAPPIJ EMMAGRACHT was and now is a corporation organized and existing under the laws of Holland and the actual and beneficial owner of the Vessel.

## THE BASIC FACTS

6.      Baltship entered into a booking note on the "CONLINEBOOKING 2000" standard form dated on or about February 5, 2008, with Spliethoff, as carrier, for the carriage of six second hand locomotives (and equipment) on a Spliethoff vessel to be nominated from Copenhagen, Demark to Newcastle, Australia (the "Spliethoff Contract"). A true copy of the Spliethoff Contract is Exhibit 1 to the accompanying Rule B affidavit.

7.      The Spliethoff Contract's "law and jurisdiction" clause calls for the law and jurisdiction of the courts of the named carrier's "principal place of business."

8.      Pursuant to the terms of the Spliethoff Contract, Spliethoff nominated the M/V EMMAGRACHT as the performing Vessel.

9.     A bill of lading dated April 21, 2008 was issued by the Vessel's Master. Rule B Aff., Ex. 2.

10.    During the course of the ocean carriage two of the locomotives shifted and were damaged in an amount, as best as can presently be determined of not less than $500,000. The shifting also allegedly caused damage to the Vessel, resulting in an oil spillage inside the Vessel.

11.    Defendants have filed suit in the Netherlands seeking a declaratory judgment that Baltship is liable to them for damages arising from the incident. A true copy of the writ is Exhibit 1 to the accompanying declaration of foreign law.

**COUNT I**

**RULE B RELIEF**

12.    Plaintiff repeats paragraphs 1 through 11 as if fully set forth herein.

13.    Plaintiff seeks issuance of process of maritime attachment so that it may obtain security for its claims including its English attorneys' fees and arbitrators' fees which are routinely awarded in London arbitration and no security for Plaintiff's claim has been posted by Defendant or anyone acting on its behalf to date.

14.    At best as can now be estimated, Plaintiff expects to recover the following amounts in the arbitration:

| A. | On the principal claim | $500,000 |
| B. | Estimated Recoverable Dutch Lawyers' fees and Costs (50,000 euros at 1.54) | $ 77,000 |
| C. | Interest over the course of 3 years at prime rate average of 6% per annum pm the principal claim | $ 30,000 |
| | **TOTAL:** | $607,000 |

15. Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), but is believed to have, or will have during the pendency of this action, assets in this jurisdiction.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against Defendants, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That since Defendants cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee, which are due and owing to Defendants up to the amount of $607,000 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

C.    That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

D.    That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, NY
       July 10, 2008

                                    Respectfully submitted,
                                    BLANK ROME LLP
                                    Attorneys for Plaintiff

                                    By
                                        Jeremy J.O. Harwood (JH 9012)
                                        405 Lexington Avenue
                                        New York, NY 10174
                                        Tel.: (212) 885-5000

## **VERIFICATION**

STATE OF NEW YORK      )
                                            :  ss.:
COUNTY OF NEW YORK   )

Jeremy J.O. Harwood, being duly sworn, deposes and says:

1.      I am a member of the bar of this Honorable Court and of the firm of Blank

Rome LLP, attorneys for Plaintiff.

2.      I have read the foregoing Complaint and I believe the contents thereof are

true.

3.      The reason this Verification is made by deponent and not by Plaintiff is that

Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.      The sources of my information and belief are documents provided to me

and statements made to me by representatives of Plaintiff.

Jeremy J.O. Harwood

Sworn to before me this
10th day of July, 2008

Notary Public
KARL V. REDA
Notary Public, State of New York
No. 30-4783126, Qual. in Nassau Cty.
Certificate Filed in New York County
Commission Expires  Nov. 30, 2009

900200.00001/6652618v.1                                    6

BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY  10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BALTSHIP A/S,<br><br>         Plaintiff,<br><br>        v.<br><br>SPLIETHOFF TRANSPORT B.V., CV<br>SCHEEPVAARTONDERNEMING<br>EMMAGRACHT and BV<br>BEHEERMAATSCHAPPIJ<br>EMMAGRACHT,<br><br>         Defendants. | 08 Civ.<br><br>**AFFIDAVIT UNDER**<br>**SUPPLEMENTAL RULE B** |

STATE OF NEW YORK    )
                         : ss.:
COUNTY OF NEW YORK  )

      JEREMY J.O. HARWOOD, being duly sworn, deposes and says:

      1.    I am a member of the Bar of this Honorable Court and a member of the

firm of Blank Rome LLP, attorneys for the Plaintiff herein.  I am familiar with the

circumstances of the complaint and submit this affidavit in support of Plaintiff's request

for the issuance of process of maritime attachment and garnishment of the property of

defendant SPLIETHOFF TRANSPORT B.V., as agent for an undisclosed principal, CV

SCHEEPVAARTONDERNEMING        EMMAGRACHT        and        BV

BEHEERMAATSCHAPPIJ EMMAGRACHT, as owners of the M/V EMMAGRACHT,

companies organized and existing under the laws of The Netherlands, pursuant to Rule B

of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

Rules of Civil Procedure.

2.    The defendants are not incorporated or registered to do business in this State.

3.    Under my supervision, my office did a search of the New York State Secretary of State, Division of Corporations, Transportation Tickler (2008 edition), telephone assistance in New York City, and the internet Yellow Pages.

4.    A listing for "Spliethoff" was found in the Transportation Tickler care of an agent in Connecticut but, as discussed in the memorandum of law, Connecticut is not a convenient adjacent district to fall within the "across the river" exception.

5.    In our search, we did not find any listing or reference to defendants in this district or state.

6.    In the circumstances, I believe the defendants cannot be "found" within this district.

7.    I attach as Exhibit 1 hereto a true copy of Plaintiff's booking note agreement dated February 5, 2008.

8.    I attach as Exhibit 2 hereto a true copy of the bill of lading issued by the Vessel for the carriage of the locomotives.

9.    I attach as Exhibit 3 hereto a true copy of an extract from the 2008

Transportation Telephone Tickler.

Jeremy J.O. Harwood

Sworn to before me this
10th day of July, 2008

Notary Public

KARL V. REDA
Notary Public, State of New York
No. 30-4783126, Qual. in Nassau Cty.
Certificate Filed in New York County
Commission Expires Nov 30, 2009

# EXHIBIT 1

**ORIGINAL**

**Page 1**

| | |
|---|---|
| Agents (full style and address)<br>**C. Breinholt A/S**<br>**Toldbodvej 1**<br>**DK - 6700 Esbjerg**<br>**Denmark** | **BIMCO LINER BOOKING NOTE**<br>**CODE NAME: "CONLINEBOOKING 2000"** |

| |
|---|
| Place and date<br>**Esbjerg 5th February, 2008** |
| Vessel<br>**MS 'Spliethoff TBN E-Type'** |

| | |
|---|---|
| Carrier (full style and address)<br>**Spliethoff transport b.v**<br>**Radarweg 36**<br>**NL - 1042 Amsterdam**<br>**Holland**<br>**(As Agents for the Carrier)** | Time for shipment (about)<br>**Lay/Can 15th March/10th April, 2008 - to be narrowed** |
| | Port of loading**<br>**Copenhagen, Denmark** |
| | Port of discharge<br>**Newcastle, NSW Australia** |

| | |
|---|---|
| Merchant* (full style and address)<br>**BaltShip A/S**<br>**Søren Frichs Vej 50**<br>**DK - 8230 Aabyhøj**<br>**Denmark**<br>**(As Agents to Merchants)** | Merchant's representatives at loading port (full style and address) |

| Container No./Seal No./Marks and Numbers (if available) | Number and kind of packages, description of cargo | Gross weight, kg (if available) | Measurement, m³ (if available) |
|---|---|---|---|
| | **6 pieces of 2nd hand LOCOMOTIVES** | | |
| | **a) 06 pieces Bodies ea 21,00 x 3,06 x 3,60h** | **each 80 mtons** | |
| | **b) 12 pieces Boogies ea 05,00 x 2,30 x 1,50h** | **each 23,5 mtons** | |
| | **c) ?? pieces of 40ft shipper's own containers** | | |
| | **a + b under deck stowage, c basis deck shipment ok** | | |
| | **otherwise as per Rider Clause 05** | | |

| | |
|---|---|
| Freight details and charges<br>**Freight: Lumpsum USD 535.000 liner in hook/liner out hook including unhooking - otherwise as per Rider Clause 09** | Special terms, if agreed<br>**Rider Clauses (01 - 16, both included) to be fully incorporated in - and form part of - this B/N 2000 contract** |
| Freight (state prepayable or payable at destination)<br>**As per Rider Clause 09** | |

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof which shall prevail over any previous arrangements and which shall in turn be superseded (except as to deadfreight) by the terms of the Bill of Lading.

| Signature (Merchant)<br>**Messrs. BaltShip A/S**<br>**- As Agents to Merchants -** | Signature (Carrier)<br>**Messrs. Spliethoff Transport b.v, Amsterdam**<br>**- As Agent for and on behalf of the Carrier -** |
|---|---|

*As defined hereinafter (Cl. 1)

**(or so near thereunto as the Vessel may safely get and lie always afloat)

This document is a computer generated CONLINEBOOKING 2000 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

Printed by BIMCO's idea

Copyright, published by
The Baltic and International Maritime Council
(BIMCO), Copenhagen, 2000

## FULL TERMS OF THE CARRIER'S BILL OF LADING FORM*

**1. Definition.**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of this Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification.**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability for Carriage Between Port of Loading and Port of Discharge.**
(a) The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ('the Hague Rules') as amended by the Protocol signed at Brussels on 23 February 1968 ('the Hague-Visby Rules') and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or, if no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsorily to this Contract.
The Protocol signed at Brussels on 21 December 1979 ('the SDR Protocol 1979') shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.
The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or with respect to deck cargo and live animals.
(b) If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, the Additional Clause.

**4. Law and Jurisdiction.**
Disputes arising out of or in connection with this Bill of Lading shall be exclusively determined by the courts and in accordance with the law of the place where the Carrier has his principal place of business, as stated on Page 1, except as provided elsewhere herein.

**5. The Scope of Carriage.**
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading, discharging, or other cargo operations and maintenance of Vessel and crew.

**6. Substitution of Vessel.**
The Carrier shall be at liberty to carry the cargo or part thereof to the Port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transshipment.**
The Carrier shall be at liberty to tranship, lighter, land and store the cargo either on shore or afloat and reship and forward the same to the Port of discharge.

**8. Liability for Pre- and On-Carriage.**
When the Carrier arranges pre-carriage of the cargo from a place other than the Vessel's Port of loading or on-carriage of the cargo to a place other than the Vessel's Port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the Port of loading and the Port of discharge even though the freight for the whole carriage has been collected by him.

**9. Loading and Discharging.**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the Vessel is ready to load and as fast as the Vessel can receive including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the Vessel is ready to load or fails to load as fast as the Vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the Vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for deadfreight and/or any overtime charges, losses, costs and expenses incurred by the Carrier.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the Vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the

Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction. If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier.
(f) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**10. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines.**
(a) Freight, whether paid or not, shall be considered as fully earned upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent, shall run from fourteen days after the date when freight and charges are payable.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing onboard, repairing damage to and replacing packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons.
(c) The Merchant shall be liable for any dues, duties, taxes and charges which under any denomination may be levied, inter alia, on the basis of freight, weight of cargo or tonnage of the Vessel.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses and losses which the Carrier, Vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.

**11. Lien.**
The Carrier shall have a lien on all cargo for any amount due under this contract and the costs of recovering the same and shall be entitled to sell the cargo privately or by auction to satisfy any such claims.

**12. General Average and Salvage.**
General Average shall be adjusted, stated and settled in London according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo, whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**13. Both-to-Blame Collision Clause.**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of the cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

**14. Government directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the carriage under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the Vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the carriage would expose the Vessel or any cargo onboard to risk of seizure, damage or delay, in consequence of war, warlike operations, blockade, riots, civil commotions or piracy, or any person onboard to risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(c) Should it appear that epidemics; quarantine; ice; labour troubles, labour obstructions, strikes, lockouts (whether onboard or on shore); difficulties in loading or discharging would prevent the Vessel from leaving the Port of loading or reaching or entering the Port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition

to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**16. Defences and Limits of Liability for the Carrier, Servants and Agents.**
(a) It is hereby expressly agreed that no servant or agent of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant and agent of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant or agent of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) For the purposes of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**15. Stowage.**
(a) The Carrier shall have the right to stow cargo by means of containers, trailers, transportable tanks, flats, pallets, or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**17. Shipper-Packed Containers, trailers, transportable tanks, flats and pallets.**
(a) If a container has not been filled, packed or stowed by the Carrier, the Carrier shall not be liable for any loss of or damage to its contents and the Merchant shall cover any loss or expense incurred by the Carrier, if such loss, damage or expense has been caused by:
(i) negligent filling, packing or stowing of the container;
(ii) the contents being unsuitable for carriage in container; or
(iii) the unsuitability or defective condition of the container unless the container has been supplied by the Carrier and the unsuitability or defective condition would not have been apparent upon reasonable inspection at or prior to the time when the container was filled, packed or stowed.
(b) The provisions of sub-clause (i) of this Clause also apply with respect to trailers, transportable tanks, flats and pallets which have not been filled, packed or stowed by the Carrier.
(c) The Carrier does not accept liability for damage due to the unsuitability or defective condition of reefer equipment or trailers supplied by the Merchant.

**18. Return of Containers.**
(a) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's tariff or elsewhere.
(b) The Merchant shall be liable to the Carrier for any loss, damage to, or delay, including demurrage and detention incurred by or sustained to containers, pallets or similar articles of transport during the period between handing over to the Merchant and return to the Carrier.

**ADDITIONAL CLAUSE**
**U.S. Trade. Period of Responsibility.**
(i) In case the Contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package or customary freight unit.

*BIMCO LINER BILL OF LADING
Code Name: "Conlinebooking 2000"
Amended January 1950;August 1952; January 1973; July 1974; August 1976; January 1978; November 2000

This document is a computer generated CONLINEBOOKING 2000 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

Terms agreed in connection with the Conline Booking Note 2000 dated Esbjerg, 5th February, 2008
Copenhagen, berth 258-265/Newcastle, berth Western Basin no 4, Australia - 6 LOCOS -
Between Messrs Spliethoff Transport b.v., Radarweg 36, Amsterdam, Holland
(as Agent for and on behalf of the Carrier)
and
Messrs BaltShip A/S, Aabyhøj, Denmark (as Agents to Merchants)

As Merchants is taking over the risk/s, which includes penalties when vessels are too late in arriving at both ends, they trust - and take it for granted - that things will be going smoothly and that an A1 performance from Spiethoff will be given.

Merchants do EXPECT to have Carrier's full attention to the importancy of: preparing the loading, handling, "following-up" (both ends), safety regulations etc etc.

This includes for instance THAT - and INCLUDED in and FORMING part of this Contract - :

a)  Port Captain is fully aware of the cargodescription and will make the necessary planning/arrangements.
b)  Operation Department Spliethoff will contact portagents and line-up the whole operation good time in advance, which - for sure - will be in Carrier's interest and save money, as avoiding any extra "handling". Call Agents, if questions.
c)  Cargo being fixed in re-cap as "under deck" SHALL be shipped under deck.
d)  Lay/Can to be RESPECTED, time factor is very, very important to Merchant.
e)  Not to arrive with a vessel in which only "touch and go" cargo can be loaded.
f)  Information and close contact to dischargingport people good time in advance will take place (and not only last moment)

## The Rider Clauses (01-16, both included) to be fully incorporated in – and form part of – this Conline Booking Note 2000.

01)  06 pieces of LOCOS MZ MARK III (knocked down) in total (see descr underneath Clause 05) to be shipped in one lot.

02)  The voyage has been booked basis PARTcargo shipment. Transhipment is not allowed. Carriers advised that the transittime will be abt 45 days agw wp and wog.

03)  Description of vessel:
     MS "Spliethoff TBN E-Type" (Edamgracht/Egelantiersgracht) abt ..... mtdwat on abt ... m draft, underaged, loa/beam of .... and in which the described cargo guaranteed by Carriers can be loaded.
     Service speed of said vessel abt 13 kn - performing vessel to be ITF fitted.
     Selfsustained vessel (as no cranes available at port/s).

04)  Loadingport:            Copenhagen (berth 258-265 Levantkajen)

     Dischargingport:        Newcastle (berth Western Basin no 4), NSW Australia

                             Carriers to check and satisfy themselves as to draft/resctrictions at both ends.

05)  **Cargo Description :**    6 pieces of 2nd hand LOCOMOTIVES

     a) 06 pcs  Bodies       ea 21.00 x 3.06 x 3.60h of each 80 mtons
     b) 12 pcs Boogies       ea 05.00 x 2.30 x 1.50h of each 23.5 mtons
     c) ?? pcs of 40ft       shipper's own container

     a+b under deck stowage, c basis deck shipment ok.

     Cargo non stackable     (b) stackable 2 h provided good/acceptable dunnage used by Carriers, who will be in charge for this under their liner in hook operation)

     Heattreated timber Stools (for the Bodies) will however be delivered by the Shippers - these will have a height abt 1100 mm, thus total height of Bodies ending up in abt 4.10m.

59   Intention will be to use 10 x 10 or 12 x 12m heattreated timber.
60   Any dunnage onboard the vessel, if needed, to be at Merchant's free disposal.
61
62   Drawings, photos etc been sent to Carriers - where CoG, dims etc can be seen.
63
64   **IMPORTANT: if ANY technical question/s AT ALL, Carriers are kindly asked to have a direct talk with**
65   **Alex Olsen of BaltShip, dir ph+45 87382116.**
66
67   **The Carriers have done last few shipments for same account – and should have the necessary knowledge as**
68   **well as experience of how to handle also this shipment (this time 6 Locos), failing which, or should Carriers**
69   **have any questions as such, Carriers are kindly herewith asked to raise eventual questions. In the past**
70   **Carriers have also received Photos of identical cargo!**

71   06) Shipment under/on deck (as above) - deck cargo at Merchant's risk and expense.

72   07) Loading of LOCOS: Locos to be lifted by the Carriers from alongside vessel into ship's hold - first mainbody, then
73   Boogies - FOB Supplier will fully assist in operation on quay, i.e. pushing next Loco ahead once first
74   Locos/Boogies loaded (this in order to load Locos from same point at loading berth)
75
76   Discharging of LOCOS: 2 Boogies to be lifted by Carriers to quay, then mainbody to be lifted carefully by
77   Carriers onto the 2 Boogies already on quay. "Kingpin" on mainbody to fit into well on Boogies (Photos sent to
78   Carriers). Once one Loco safely placed on the 2 Boogies, each Loco will be pused away in order to make room for
79   next operation, i.e. until all Locos discharged.
80
81   Sensitive cargo like this, bearing in mind weights and "Kingpin-operation"/Mounting, will require
82   daylightoperation, which Carriers do accept.
83
84   Locos operation INCLUDING unhooking in Newcastle.
85
86   Carriers will allow 2.5 wwdays for the loading- & dischargingoperation, after which detention is payable to
87   Carriers.

88   08) Lay/can    15th March/10th April, 2008 to be narrowed

89   09) The freight has been agreed to be liner in hook/liner out including unhooking USD 535.000 Lumpsum.
90
91   Carriers to perform all l/s/d for their own account and with their own material/equipment. The only exception will
92   be the Stools for the Bodies (See Cl. 05)
93
94   Detention rate has been agreed to be USD 20.000 pdpr.
95
96   Freight payable 10 Banking days after signing Bs/L into Carrier's nominated bank account and deemed earned as
97   cargo is being loaded on board discountless and non-returnable ship and/or cargo lost or not lost. Bs/L marked
98   "Freight payable as per CP" - otherwise to be held by portagents and only to be released upon Carrier's
99   confirmation that freight has been received. 4% addrcomm will be deducted from the payment. Instructions as to
100  invoice/addresses/vat etc will follow when payment is due.
101
102  **IMPORTANT:** It is extremely important, that the issuing of Bs/l is taking place right after vessel's completion, as
103  Merchants will need to present a **COPY** of the Bs/l to the Shippers already the day after vessel's departure
104  (Weekends and Holidays included). All relevant information in respect of drawing up the Bs/l will be at
105  Agent's/Carrier's hand before loading. The release of the Bs/l can follow as per usual and normal procedure.

106  10) Stowageplan to be forwarded in good time before loading.

107  11) Selfsustained vessel needed for this job - take it furthermore for granted, that Carriers disposes of needed slings as
108  well as spreaderbar for important and correct uplift/angle.

109  12) Cargo to be delivered/received as fast as vessel can load/discharge - (but see Cl. 07)

110  13) Any taxes and/or dues/wharfage on freight and/or cargo to be for Shipper's/Receiver's account.
111
112  Australian Port Charges for No 4 West Basin Newcastle to be paid at applicable rate published by Newcastle Port
113  Corporation applicable to that berth.

114    NO additional PSC Charges due local Agent. (See further Cl 14 2nd Para)
115
116    Carriers agree (sub being competitive) to use the local stevedore "Newcastle Stevedoring" owned by  Geaoff
117    Beasley, which is an organisation, Receivers has a good relationship with.

118    14)  Carrier's Agents both ends:
119
120    Copenhagen                              Messrs. Baltic Shipping A/S
121                                                  Ph +4539 96 08 00, Fax +4539 64 00 80, Mail: bsc@balticshipping.dk
122                                                  (Subject being competitive on D/A)
123
124    Newcastle                               To be nominated by Carriers (To Merchants: Any wishes?)
125                                                  (Agents under no circumstances to "overcharge" on any
126                                                  taxes/dues/wharfage on freight and/or cargo, which are
127                                                  Shipper's/Receiver's account - same, if any,  to be settled
128                                                  and negotiated by "cargo receive")

129    15)  It is understood, that although Merchants have allowed for part of cargo to be stowed on deck, if required, it is
130         Carrier's clear responsibility to arrange for safe/satisfactory securing and protection of the cargo according to IMO
131         regulations standard - before vessel's departure. The representative of the cargounderwritters may be allowed
132         inspection of the lashing/securing of the cargo, if required.

133    16)  Carriers are to keep Merchants (via their broker) fully advised of vessel's position as well as to give 7/5/3/2/1 day/s
134         notice of arrival at both ends and at the same time indicating commencement of operation. Furthermore please
135         note that notice/s has a HIGH GRADE of importancy, wherefore Carriers automatically DAILY to send an e-mail
136         to broker advising vessel's actual speed/average speed/lat. + long. and ETA dischargingport.
137
138

139                   **On behalf of the Merchants:**                    **On behalf of the Carriers:**
140

141                   Messrs. BaltShip A/S                          Messrs. Spliethoff Transport b.v.
142                   Aabyhøj, Denmark                             Amsterdam, Holland
143                   (as Agents for Merchants)                   (as Agent for and on behalf of the Carrier)

# EXHIBIT 2

| Shipper (full style and address) | BIMCO LINER BILL OF LADING |
|---|---|
| BaltShip A/S<br>Soren Frichs Vej 50<br>DK-8230 Aabyhoj | CODE NAME: "CONLINEBILL 2000"<br><br>Amended January 1950; August 1952; January 1973;<br>July 1974; August 1976; January 1978; November 2000. |

| Consignee (full style and address) or Order | B/L No. | Reference No. |
|---|---|---|
| Graziosi - BaltShip Pty. Ltd.<br>Unit 1.2 Bishop Street<br>St. Peters Sydney NSW, 2044 Australia<br>Attn. Mr. Stig Bonnichsen | SFFVEMCONE804001 | |

| Notify Party (full style and address) | Vessel |
|---|---|
| Graziosi – BaltShip Pty. Ltd.<br>Unit 1.2. Bishop Street<br>St. Peters Sydney NSW, 2044 Australia | M/v "Emmagracht" |

| | Port of loading |
|---|---|
| | Copenhagen |

| | Port of discharge |
|---|---|
| | Newcastle, NSW, Australia |

**PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER**

| Container No./Seal No./Marks and Numbers | Number and kind of packages; description of cargo | Gross weight, kg | Measurement, m³ |
|---|---|---|---|
| Serial no. 1433, 1438, 1441, 1444, 1445, 1446 | Project name: MZ LOCOS<br>**Cargo description:**<br>6 x second hand locos MZ mark III in knock-down condition<br>a) 6 pcs. Bodies Ea. LWH 21,000 x 3,060 x 3,600 m / 80 mt<br>b) 12 pcs Boogies Ea. LWH 5,000 x 2,300 x 1,500 m / 23,5 mt<br><br>Shipped on board M/v "Emmagracht" from Copenhagen 21 April 2008 | 480.000 kgs<br><br>282.000 kgs | |

| | |
|---|---|
| SHIPPED on board in apparent good order and condition (unless otherwise stated herein) the total number of Containers/Packages or Units indicated in the Box opposite entitled "Total number of Containers/Packages or Units received by the Carrier" and the cargo as specified above, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of discharge or so near thereunto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the Port of discharge unto the lawful holder of the Bill of Lading, on payment of freight as indicated to the right plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant* expressly accepts and agrees to all its stipulations on both Page 1 and Page 2, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant. One original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void. IN WITNESS whereof the Carrier, Master or their Agent has signed the number of original Bills of Lading stated below right, all of this tenor and date. | **Total number of Containers/Packages or Units received by the Carrier**<br>18 units |
| | Shipper's declared value / Declared value charge |
| | Freight details and charges<br><br>Freight as per C / P |

| Carrier's name/principal place of business | Date shipped on board | Place and date of issue |
|---|---|---|
| | 21 April 2008 | Copenhagen, 2 2 -04- 2008 |
| CV SCHEEPVAARTONDERNEMING EMMAGRACHT | Number of original Bills of Lading | |
| | 3 / three | |
| **MASTER MV EMMAGRACHT** | Pre-carriage by** | |
| Signature .......................................................... Carrier<br>or, for the Carrier<br>Eddy Koolhof ....................................... as Master<br>(Master's name/signature) | Place of receipt by pre-carrier** | |
| .......................................... as Agents<br>(Agent's name/signature) | Place of delivery by on-carrier** | |

*As defined hereinafter (Cl. 1)
**Applicable only when pre-/on-carriage is arranged in accordance with Clause 8

Copyright, published by
The Baltic and International Maritime Council
(BIMCO), Copenhagen, 2000

Printed and sold by Fr. G. Knudtzons Bogtrykkeri A/S, Vallensbaekvej 61, DK-2625 Vallensbaek, Fax: +45 4366 0701
by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen

# EXHIBIT 3



**The Journal of Commerce**

# 2008
## TRANSPORTATION TELEPHONE
# TICKLER
### www.ticklronline.com

National Edition Volume I ▪ New York Metropolitan Area

Case 1:06-cv-02767-RMB   Document 1   Filed 07/11/2006   Page 20 of 20

## I-172

5 Amsterdam Ave., New York, NY 10024 . . . . . . . . (212) 873-3600

inwell Rd., Ste. 203, Hillsborough, NJ 08844 . . . . . . . (908) 431-7655

Web Site: www.somersetmarine.com

ood St., Patchogue, NY 11772 . . . . . . . . . . . . . . . . . (631) 758-0909
*The Port of Charleston)*



## Port Corporation

P.O. Box 129
Camden, NJ 08101

Tel: 856.757.4969
Fax: 856.757.4903

www.southjerseyport.com

THE PORT OF CAMDEN
SJPC

IPORATION
S)(SVB)(TCZ)(TMN)
iden, NJ
iden, NJ
NJ

. . . . . . . . . . . . . . . . . . . . . . . . . . . . **(856) 757-4969**

)08 National Edition Volume II Back Cover;
antic Edition, Inside Front Cover)

rebs                                                    E-Mail: jbalzano@southjerseyport.com
ignola

iervices – Jay Jones
id

c Martins,
h Maressa, Jr.
5th Ave., New York, NY 10019-4102 . . . . . . . . . (212) 554-0100

                        Other Answerback: STAR UR
                                          Telex: 232484
                        Telex II (TWX): 710-581-4290

itakis
iremi, Jr.

avek
hillianis
en
Shipping Limited

er call (800) 221-5488, ext. 7855

## I-173                                             ST

Southold Maritime Services Corp., (RCA)(SBA)(TNC), P.O. Box 76,
  Southold, NY 11971-0076 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (631) 765-0099
  FAX: (631) 765-5838
  President – Thomas F. Fox
  E-Mail: tomfoxmsc@optonline.net
Southwest Airlines Cargo, (AFF)(ASF), 201 Clark Dr., Ronkonkoma, NY 11779 . . . . . . . . . . . . (631) 580-7397
  FAX: (631) 580-2912
  Web Site: www.swacargo.com
  Corporate Headquarters: Dallas, TX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (800) 533-1222
The Sparta Group of New Jersey, Inc., (CEA)(CXS), 3 Deer Run, Andover, NJ 07821 . . . . . . . . (973) 786-5566
  FAX: (973) 786-7576
  Director – Thomas Priester
Spearin, Preston & Burrows, Inc., (PTS), 3365 Richmond Ter.,
  Staten Island, NY 10303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (718) 720-8029 (24 Hrs.)
  Other Phone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (718) 273-0366
  FAX: (718) 273-9326
  Contact – John Eckert
Specific International Freight Forwarding Inc., (AFF)(FFI/CHB)(T), 108 S. Franklin Ave.,
  Ste. 10, Valley Stream, NY 11580 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (516) 593-3480
  FAX: (516) 593-3481
  President – Nash Jacob
Speedier Logistic (USA) Inc., (NVO), 147-39 175th St., Ste. 208, Jamaica, NY 11434 . . . . . . . . (718) 244-8833
  FAX: (718) 244-1313
  Operations Manager – Alan Chu
Sperry Marine, Inc., (NS)(TEL), 70 Jackson Dr., Cranford, NJ 07016 . . . . . . . . . . . . . . . . . . . (908) 276-6677
  FAX: (908) 276-6841
Spiegel Trucking Co., (T), 1000 Frank E. Rogers Blvd. S., Harrison, NJ 07029 . . . . . . . . . . . . (973) 482-20|
  FAX: (973) 483-3573

**SPLIETHOFF**
**(HL)(SBA)(SBB)(SRL)(TOD)**
**c/o Ocean Transport Services LLC as agents**
**68 Great Hill Rd.**
**Ridgefield, CT 06877** . . . . . . . . . . . . . . . . . . . . . . . . . . **(203) 438-1136**
  FAX: (203) 431-3443
  E-Mail: otsusa@aol.com

**SPLIETHOFF HOUSTON TX INC. /**
**BIGLIFT SHIPPING AMERICAS**
**(BY)(HL)(SBB)(SVB)**
**12727 Featherwood, Ste. 121**
**Houston, TX 77034** . . . . . . . . . . . . . . . . . . . . . . . . . **(713) 812-0913**
  FAX: (713) 812-0914
  E-Mail: spliethoff@us-gulf.com                          Web Site: www.spliethoff.com
  Other E-Mail: houston@bigliftshipping.com            Other Web Site: www.bigliftshipping.com
  Contacts – Richard A. Puig, Peter Ludwig
Stalco Forwarding Services, Inc., (AFF)(FC)(FFI/CHB), 7 Penn Plz., Ste. 1110,
  New York, NY 10001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (212) 329-3150
  FAX: (212) 329-3060
  FMC: 3507
  E-Mail: wds@stalco.com
Stanmar Shipping Co., Inc., (FFI/CHB), 790 Bloomfield Ave., Clifton, NJ 07012 . . . . . . . . . . . (973) 473-3111
  FAX: (973) 473-2882
  President – Stanley Michal
Star Global, (GW)(CHM)(SPC), 149-35 177th St., 2nd Floor, Jamaica, NY 11434 . . . . . . . . . . (718) 656-5360
  FAX: (718) 656-8047
  E-Mail: happy.chau@startrans.com
  Web Site: www.startrans.com
Starr Marine Agency, Inc., (I), 90 Park Ave., 7th Fl., New York, NY 10016 . . . . . . . . . . . . . . . (646) 227-6414
  FAX: (646) 227-6649
  Vice President – Peter J. Scrobe              E-Mail: peter.scrobe@cvstarr.co.com
  Manager, West Coast – F. Michael Simone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (415) 343-7890
    Cell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (650) 452-8627